| | | |
|---|---|---|
| **MICHAEL HALEY,** | * | **NO. 2024-CA-0741** |
| **OKYEAME HALEY AND** | | |
| **BLAIR HALEY** | * | **COURT OF APPEAL** |
| | | |
| **VERSUS** | * | **FOURTH CIRCUIT** |
| | | |
| **CANDICE HENDERSON AND** | * | **STATE OF LOUISIANA** |
| **THE FRIENDS OF THE** | | |
| **FREEDOM HOUSE** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-05929, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins,
Judge Karen K. Herman)

N. Sundiata Haley
HALEY LAW FIRM, LLC
650 Poydras Street, Suite 2317
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFF/APPELLEE

William D. Aaron, Jr.
DeWayne L. Williams
AARON & GIANNA, PLC
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170

     COUNSEL FOR DEFENDANT/APPELLANT

                                        **AFFIRMED**
                                     **APRIL 3, 2025**

This case involves an injunction regarding name, image, and likeness rights, also referred to as "identity rights." Defendants/appellants, Candice Henderson and the Friends of the Freedom House (collectively "Henderson"), appeal the district court's judgment dated September 13, 2024, which denied their "Motion to Dissolve or Alternatively Modify Temporary Restraining Order and Preliminary Injunction and Request for Damages and Attorney Fees." For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs/appellees, Michael Haley, Okyeame Haley, and Blair Haley (collectively, the "Heirs"), are the descendants and heirs of Oretha Castle Haley, a prominent local Civil Rights figure. The underlying dispute stems from Henderson's acquisition of a property, which was Oretha Castle Haley's home during her childhood and throughout the Civil Rights Era, and Henderson's subsequent attempts to turn the property into a Civil Rights museum, event space, and short-term rental, while using Oretha Castle Haley's name, image, and likeness

1

in promotion of these efforts. On June 26, 2023, the Heirs filed a petition for temporary restraining order ("TRO"), preliminary injunction, and permanent injunction, claiming violations of the recently enacted Allen Toussaint Legacy Act (the "Legacy Act"), La. R.S. 51:470.1 *et seq.*, which provides for heritable name, image, and likeness rights. On the same date, the district court signed a TRO prohibiting Henderson "from using the name, image and/or likeness of Oretha Castle Haley in any manner whatsoever." The preliminary injunction hearing was initially scheduled on July 11, 2023, but was continued twice at Henderson's request, while Henderson agreed to permit the TRO to remain in place. Meanwhile, on July 21, 2023, the Heirs filed a motion for contempt, arguing that Henderson violated the TRO through her website and social media promotion of museum exhibits displaying Oretha Castle Haley's name, image, and likeness.

On August 1, 2023, the hearing went forward on the preliminary injunction and rule for contempt. The district court rendered a written judgment on August 21, 2023, granting the preliminary injunction and prohibiting Henderson "from using the name, image and/or likeness of Oretha Castle Haley in [any] manner whatsoever" and "from representing the legacy of Oretha Castle Haley in any manner whatsoever." The rule for contempt was also granted. Henderson did not appeal the judgment.

On July 10, 2024, Henderson filed a "Motion to Dissolve or Alternatively Modify Temporary Restraining Order and Preliminary Injunction and Request for Damages and Attorney Fees." Henderson argued that the Heirs' identity rights

terminated through nonuse of Oretha Castle Haley's name, image, and likeness for commercial purposes during a period of three years. Henderson also contended that the Heirs failed to furnish security in connection with the issuance of the TRO or preliminary injunction. Lastly, in the alternative, she argued the preliminary injunction should be modified as vague and overly broad, as its "any manner whatsoever" language expands beyond the scope of the protections of the Legacy Act and in violation of her freedom of speech rights.

On August 23, 2024, the district court held a hearing on the motion to dissolve or modify, where the court denied the motion from the bench. The district court rendered a written judgment on September 13, 2024 reflecting its ruling. This appeal followed.

## LAW AND ANALYSIS

On appeal, Henderson asserts that the district court legally erred and/or abused its discretion in failing to dissolve or modify the preliminary injunction. She raises similar arguments to those made below: (1) the Heirs' identity rights terminated upon three years of nonuse for commercial purposes; (2) the Heirs were required to post security to obtain injunctive relief; and (3) the preliminary injunction is overly broad.

**Allen Toussaint Legacy Act, La. R.S. 51:470.1** *et seq.*

The Legacy Act was enacted in 2022 and is set forth in La. R.S. 51:470.1 through 51:470.6. The interpretation of these statutes is a matter of first impression. Under the Legacy Act, "[e]very individual has a property right in

3

connection with the use of that individual's identity for commercial purposes." La.

R.S. 51:470.3(A). Pursuant to the pertinent portions of the definitions section:

> (3) "Commercial purposes" means the use of an individual's identity for any of the following purposes:
>
>> (a) On or in connection with products, merchandise, goods, services, commercial activities, or performances.
>>
>> (b) For advertising, soliciting, or promoting products, merchandise, goods, services, commercial activities, or performances.
>>
>> (c) For the purpose of fundraising.
> …
> (6) "Identity" means an individual's name, voice, signature, photograph, image, likeness, or digital replica.
>
> (7) "Individual" means a living natural person domiciled in Louisiana or a deceased natural person who was domiciled in Louisiana at the time of the individual's death.

La. R.S. 51:470.2.

Identity rights do not expire upon death of the individual and are heritable.

La. R.S. 51:470.3(B)-(C). Identity rights terminate as a matter of law upon the

earlier of the following circumstances:

> (1) Proof of nonuse of the individual's identity for commercial purposes by an individual's authorized representative for a period of three consecutive years following the individual's death.
>
> (2) Fifty years following the individual's death.

La. R.S. 51:470.3(E).

"It shall be a violation of this Subpart for any person to use an individual's

identity for a commercial purpose in Louisiana without having first obtained

consent from the individual or the individual's authorized representative." La. R.S. 51:470.4(A). Under this statute, a person who violates an individual's identity rights may be liable for damages. La. R.S. 51:470.4(E)(1). Also, "[a] court of competent jurisdiction may grant the plaintiff, in a proceeding under this Section, a temporary restraining order or an order for injunctive relief." La. R.S. 51:470.4(E)(2).

**Dissolution or Modification of Preliminary Injunction**

Pursuant to the Legacy Act's provision for injunctive relief, the Heirs obtained in the district court a TRO followed by a preliminary injunction. Henderson sought to dissolve or modify the preliminary injunction under La. C.C.P. art. 3607, which permits an "interested person" to "move for the dissolution or modification of a … preliminary injunction, upon two days' notice to the adverse party, or such shorter notice as the court may prescribe. The court shall proceed to hear and determine the motion as expeditiously as the ends of justice may require." A motion to dissolve or modify a preliminary injunction has a specific and limited procedural function, wherein the district court must consider only the evidence presented and the arguments raised at the time the preliminary injunction was granted and must then determine whether the preliminary injunction should have been granted. As one court explained the standard:

> The mover is not required to show that a change in circumstances has occurred before a preliminary injunction may be dissolved. *Zanella's Wax Bar, LLC v. Trudy's Wax Bar, LLC*, []19-0043 (La. App. 1st Cir. 11/7/19), 291 So.3d 693, 697, *writ denied*, []19-01931 (La. 1/28/20), 291 So.3d 1052. However, on a motion to

5

> dissolve a preliminary injunction, a trial court should not consider arguments or evidence that could have been raised at the time the preliminary injunction was issued. *Turbine Powered Technology, LLC v. Crowe*, []18-0881 (La. App. 1st Cir. 9/5/19), (unpublished) 2019 WL 4201579, *9, *writ denied*, []19-01548 (La. 11/19/19), 282 So.3d 1063.
>
> The sole question to be determined at a hearing to dissolve a preliminary injunction is whether, on the facts disclosed, the court should have granted the injunction in the first instance. *Turbine Powered Technology, LLC*, 2019 WL 4201579 at *9.

*Livingston Par. Sch. Bd. v. Kellett*, 22-1240, p. 6 (La. App. 1 Cir. 5/18/23), 368 So.3d 621, 626.

The party seeking the preliminary injunction bears the burden to "establish by *prima facie* evidence that: (1) it will suffer irreparable injury, loss, or damage if the motion is not granted; and (2) it is entitled to the relief on a showing that it will likely prevail on the merits." *Ard v. GrrlSpot, LLC*, 19-0312, p. 14 (La. App. 4 Cir. 10/23/19), 364 So.3d 358, 366. Generally, a district court's decision granting or denying a preliminary injunction is subject to review for an abuse of discretion. *Two Canal St. Invs., Inc. v. New Orleans Bldg. Corp.*, 15-0924, p. 5 (La. App. 4 Cir. 4/20/16), 193 So.3d 278, 282. "That broad standard is, of course, based upon a conclusion that the [district] court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion." *Yokum v. Pat O'Brien's Bar, Inc.*, 12-0217, p. 7 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80. Factual determinations in the granting or denial of preliminary injunctions are subject to the manifest error standard of review. *Two Canal St. Invs., Inc.*, 15-0924, p. 5, 193

So.3d at 282. Where the lower court commits an error of law, the *de novo* standard of review applies. *Id.*, 15-0924, p. 5, 193 So.3d at 282-83.

**Termination of Identity Rights**

We first address Henderson's argument that the Heirs' identity rights terminated due to three years of nonuse for commercial purposes. We begin by recognizing that, on a motion to dissolve or terminate a preliminary injunction, the district court may not consider new evidence or new arguments that could have been presented at the time the preliminary injunction was granted. *See Kellett*, 22-1240, p. 6, 368 So.3d at 626; La. C.C.P. art. 3607. Instead, the proper inquiry to the district court is whether "on the facts disclosed, the court should have granted the injunction in the first instance." *Kellett*, 22-1240, p. 6, 368 So.3d at 626. The hearing transcript reflects that the Heirs offered the testimony of two of the plaintiffs, Michael Haley and Okyeame Haley. Henderson introduced new documentary evidence: Secretary of State records that The Learning Workshop, Inc. – a facility founded and operated by Oretha Castle Haley to provide childcare, educational, and transportation services – was inactive and had not filed an annual report since 1986; and City of New Orleans reports that the building where the Learning Workshop, Inc. was located is a blighted property. This evidence was not properly before the district court as it could have been brought at the time the preliminary injunction was issued, but it was not.

We also note that while the Heirs bear the burden of proof on their entitlement to a preliminary injunction, Henderson bears the burden of proof on

7

any affirmative defenses she may raise. *See Fin & Feather, LLC v. Plaquemines Par. Gov't*, 16-0256, p. 9 (La. App. 4 Cir. 9/28/16), 202 So.3d 1028, 1034 ("[a] party defendant who asserts an affirmative defense bears the burden of proof thereof")(quotation omitted). "Louisiana jurisprudence defines an affirmative defense as a defense that raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action." *Id.*, 16-0256, pp. 6-7, 202 So.3d at 1033 (internal quotations omitted). At least one court in another state characterized abandonment of a property right in name, image, and likeness as an affirmative defense on which the party asserting the affirmative defense bore that burden of proof. *See Est. of Bisignano by & through Huntsman v. Exile Brewing Co., LLC*, 694 F. Supp. 3d 1088, 1123-24 (S.D. Iowa 2023). Consistent with this reasoning, under La. R.S. 51:470.3(E)(1), identity rights terminate upon "[p]roof of nonuse of the individual's identity for commercial purposes by an individual's authorized representative for a period of three consecutive years following the individual's death." It follows that a defendant seeking to defeat injunctive relief over identity rights would be the party seeking to supply such proof. The district court found, and we agree, that Henderson bore the burden to show that identity rights terminated; however, Henderson did not meet her burden of proof.

For the reasons above, we do not consider the new evidence adduced at the hearing on the motion to dissolve or modify. Very limited evidence of the Heirs' commercial use was presented at the August 2023 hearing on the preliminary injunction. Henderson specifically cites a line of questioning wherein Okyeame

Haley admitted in his testimony that he could not remember a time when he personally earned a profit from his mother's name, image, and likeness. Nevertheless, it is undisputed that the Heirs are the appropriate authorized representatives; that Henderson did not inherit identity rights; and that Henderson used Oretha Castle Haley's name and photograph in her museum exhibits, on social media, in fundraising, and in soliciting donations and rentals. We cannot say, in this context, that Okyeame Haley's testimony, without more, is dispositive of the termination of the Heirs' identity rights. We discern no abuse of discretion in the district court's rejection of this argument and its denial of the request to dissolve the preliminary injunction.

**Sufficiency of Language Describing Acts to be Restrained**

Additionally, we find no merit in Henderson's argument seeking to modify the language of the preliminary injunction, which she argues is overly broad. Henderson seeks to vacate the injunction's reference to the "legacy" of Oretha Castle Haley and to add limiting language constraining the injunction to "commercial conduct" and subjecting it to "exempt uses" under the Legacy Act.[1]

---

[1] Numerous "exempt uses" are enumerated in La. R.S. 51:470.5 as follows:

> B. It shall not constitute a violation of this Subpart to use an individual's identity under any of the following circumstances:
> (1) In connection with a news, public affairs, sports transmission or account, or political campaign.
> (2) In a work of political, public interest, educational, or newsworthy value, including comment, criticism, or parody, or similar works, such as documentaries, docudramas, or historical or biographical works, or a representation of an individual as himself or herself, regardless of the degree of fictionalization.
> (3) In a play, book, magazine, newspaper, literary work, musical composition, single and original work of art or photograph, or visual work.

Under La. C.C.P. art. 3605, "[a]n order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained."

It is readily apparent that the parties subject to the preliminary injunction are identified. The acts enjoined are also sufficiently described: using the name, image, and/or likeness of Oretha Castle Haley. Even though the Legacy Act contains no definition of "legacy," it is obvious from reading the statutes, together and in light of one another, that they regulate commercial use of a property right in identity. This is precisely what the district court determined that Henderson violated.

Even though the language "in any manner whatsoever" is broad, Henderson fails to articulate with any specificity how it should be more narrowly tailored, beyond merely parroting the statutory language already contemplated in the 2023

---

(4) In a sound recording, audiovisual work, motion picture, or radio or television program, unless the use creates an unauthorized performance.
(5) Any act of restoration or preservation of a sound recording, audiovisual work, or radio or television program.
(6) In an advertisement, commercial announcement, or display of any of the works described in this Subpart.
(7) To accurately identify the individual as the author of a given work, or a performer of a given work or performance, under circumstances in which the work or performance is otherwise rightfully reproduced, exhibited, or broadcast.
(8) To lawfully make a work available for sale or licensing purposes insofar as the terms of the sale or license do not permit the user to violate this Subpart.
(9) Data collection or data reporting and supplying the data collected or reported.
(10) Data processing, data matching, data distribution, or data licensing.
(11) In connection with the publication of an expressive work created prior to August 1, 2022.
(12) If the use is merely incidental.

judgment. Moreover, at no time in the proceedings did Henderson come forward with evidence of an exempt use of name, image, and likeness. Rather, Henderson's argument is that the Heirs' rights have terminated, such that no bar exists to Henderson's use of name, image, and likeness for any commercial purpose. We are unable to discern from her arguments what freedom of speech rights she claims to have been constrained. Moreover, we are mindful that a "preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties, pending trial on the merits." *Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orleans*, 15-1308, p. 12 (La. App. 4 Cir. 5/25/16), 195 So.3d 606, 615. Instead of disturbing the effects of the preliminary injunction at this stage, we find it more appropriate for this matter to proceed to a full trial to determine, with complete evidence, whether the Heirs are entitled to a permanent injunction enforcing the identity rights they claim and enjoining others from exercising such rights. In the procedural posture before us, however, we cannot say that Henderson is entitled to the relief she seeks, and we will not disturb the preliminary injunction or the judgment of the district court.

**Security for Temporary Restraining Order or Preliminary Injunction**

Henderson argues that the district court erroneously failed to require a bond be posted to obtain the preliminary injunction. The Legacy Act is silent as to any requirement of security to obtain injunctive relief. Under La. C.C.P. art. 3610, a "temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security

11

is dispensed with by law." The district court granted the TRO without any order that security be posted. Henderson agreed to the TRO remaining in effect for six weeks, so that the Heirs would not object to continuance of the hearing on the preliminary injunction and rule for contempt. *Compare Thiele v. Pembo*, 23-213, p. 6 (La. App. 5 Cir. 3/13/24), 384 So.3d 1067, 1071 (where the aggrieved party "did not raise [noncompliance with civil procedure articles concerning injunction] before the trial court and did not file an application for supervisory writs with this Court[,]" her "assignments of error regarding the temporary restraining order are not properly before this Court for review on appeal … [and] will not be considered").

The record reflects no written opposition to the preliminary injunction or other filing seeking to impose security. During arguments at the preliminary injunction hearing, Henderson raised the issue of security for the first time. The district court found that the Legacy Act did not require security to obtain the preliminary injunction, and Henderson did not appeal that ruling. Under La. C.C.P. art. 3612, an appeal from a judgment relating to a preliminary injunction must be taken within fifteen days of the date of that judgment. Henderson did not file her motion to dissolve or modify the injunction until nearly one year later, during which period the preliminary injunction remained in place without any order to post security. At the hearing of the motion to dissolve or modify, the district court stated in its oral reasons that the issue of security was no longer before it. Under

these particular procedural circumstances, we decline to disturb the district court's ruling.

**Attorney's Fees**

Finally, we reject Henderson's argument that she was entitled to attorney's fees for wrongful issuance of the TRO and/or preliminary injunction. Under La. C.C.P. art. 3608, "[a]ttorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits." Because we uphold the district court's denial of the motion to dissolve or modify the preliminary injunction, Henderson is not entitled to attorney's fees. We find no merit in this argument.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the September 13, 2024 judgment of the district court.

**AFFIRMED**